COUNT IV - U.S. Constitution, Amendments 5, 6, 14.

133b. Paragraphs 1-133 are realleged.

134. Denner and Abbott were attorneys comparatively situated.

135. They both did primarily criminal defense work.

136. Abbott rented office space from Denner in 1990 and 1991.

137. Denner gave parts of the Atehortua case to Abbott as Abbott did not know any of the Atehortuas when Denner and Oscar Atehortua entered into a fee agreement.

138. Atehortua signed a complaint against both Denner and Abbott.

139. Defendant Rabe's theory of Atehortua's claim was that Atehortua paid Denner $9,000 of an $18,000 contract, and an additional $3,000 of the remaining $9,000 for Abbott to do a direct appeal.

140. The first $9,000 was, according to Rabe, for a review of the transcripts and for a Motion For A New Trial.

141. It is uncontested that Denner received all $9,000 for the first part of the fee and Abbott received none.

142. Denner visited Atehortua in prison once around 1991 or 1992.

143. Abbott visited Atehortua in prison six (6) times in 1992 and 1993.

144. Denner never wrote any briefs or memoranda, either for the direct appeal or the Motion For A New Trial.

145. Abbott wrote, he believes, at least seven memoranda drafts for a Motion For A New Trial, although he could only prove he wrote five drafts

-22-

146. Abbott was vigorous in trying to get a New Trial hearing before the trial judge, writing his clerk several times, calling him, and visiting him at Suffolk Superior Court.

147. Denner had no communications with Judge Mulligan's clerk and made no effort to get Oscar Atehortua a hearing for a Motion For A New Trial.

148. Abbott argued Atehortua's Motion For A New Trial before Judge Mulligan in October of 1993 and subpoenaed a witness to the proceedings. Denner did not attend the proceedings.

143. Denner reviewed the transcripts of Atehortuas' trial.

144. In the thousands of cases Abbott was involved in in Massachusetts, Rhode Island, federal and other state courts, he was once given a private admonition by the Massachusetts BBO in 1989. In that case Abbott admitted he forgot about a case and the deadlines and even wrote an affidavit to be used in federal court to help his client.

145. The Plaintiff does not know what cases, if any, Denner was disciplined for.

146. Denner didn't make a Motion To Withdraw in Atehortua's case until 1994.

147. Atehortua claims that until that time he always thought Denner was his attorney.

148. Abbott was treated far more harshly and disparately then the comparatively situated Denner who received far more money from Atehortua for less work.

149. He offered the Plaintiff no substantive help in Atehortua's post conviction relief other than to say he should file a Motion For A New Trial.

150. Once he discovered Atehortua's direct appeal had been dismissed he told Abbott to make a Motion to get it reinstated and then withdraw it.

151. Upon information and belief, when Denner testified before the hearing committee, the charges against him had not been dropped.

152. Denner testified incorrectly about a vital point. He claimed that Atehortua's best issue, the "two Oscar" issue could be raised on direct appeal.

153. Denner was an important witness, other than Atehortua, Denner was the only party who was involved from the outset in the case.

154. When the possibility of bias exists, even if remote, the evidence of that is for the fact finders to hear and evaluate. This didn't happen.

155. At the hearing there was no testimony that Denner was still under investigation or when the charges had been dropped, if at all, against him.

156. Upon information and belief, Denner was never disciplined in the Atehortua case.

156a. Defendant Rabe impermissibly violated the Plaintiff's right to Equal Protection and he was greatly damaged as a direct and proximate cause of her actions.

COUNT V- U.S. Constitution, Amendment 14.

157. Paragraphs 1-156 are realleged.

158. Attorney Abbott and attorney Michael Fredrickson were comparatively situated.

159. As an employee of the state, attorney Fredrickson had additional strictures upon him that Abbott did not have.

160. Both Abbott and Fredrickson were charged with violating rules, Abbott the disciplinary rules, Fredrickson the Mass. General Laws, conflict of interest statute.

161. Defendant Fredrickson claimed he didn't violate the conflict of interest laws as he did his BBO work at home, during non business hours.

162. The State Ethics Committee did not believe him for while he kept detailed records of his expenses for novel-related tasks, including paper and stamps, he kept no records of the hours or any other pertinent detail he spent doing BBO related work at home.

163. Defendant Fredrickson was charged with a violation not in just one case as Abbott had been, but of a continuous violation from when he began as general counsel for the BBO from mid 1990s through early May of 2001 when his second novel was published.

164. Upon information and belief, Defendant Fredrickson's violations affected dozen of attorneys negatively.

165. Even Defendant Rabe had to finally reluctantly admit that Abbott's strategy of

passing on the worthless direct appeal was acceptable.

166. Fredrickson was never suspended. His total penalty was ten thousand (10,000) dollars in fines, $5,000.00 to the State Ethics Committee, $5,000.00 to the BBO.

167. Abbott was never offered just fines to settle the charges against him.

168. Upon information and belief, Defendant Fredrickson made more in advances and royalties from his two novels than $10,000.

169. From a purely economic standpoint, Fredrickson was better off writing novels during office hours and collecting his checks from the BBO from the mid 1990s to May of 2001 than just working at the BBO during office hours.

170. Defendant Fredrickson violated the Plaintiff's right to Equal Protection and he was greatly harmed as a direct and proximate result of the Defendant's actions.

## THE TORT CLAIMS

The general negligence claim is against both defendants as is the infliction of emotional distress. The negligence per se, negligent supervision, abuse of process, are against Defendant Fredrickson only. For all the claims below, jurisdiction is based on diversity, is well within the three year statute of limitations from the SJC judgment in 2002, and it is irrelevant whether the Defendant/s were acting under color of state law.

### COUNT VI - Negligence per se

170. Paragraphs 1-169 are realleged.

171. Defendant Michael Fredrickson violated Mass. General Laws, c.268A.

172. For his violation of this conflict of interest statute he was fined a total of $10,000 by the State Ethics Commission, $5,000 to go to the State Ethics Commission, $5,000 to go to the BBO.

173. The violation was for shirking his duties at the BBO during office hours and instead working on his novel during office hours from the mid 1990s through May of 2001.

174. During that time Abbott was both a member of the Massachusetts general public as well as a member in good standing of the Massachusetts bar.

175. Defendant Fredrickson had a legal duty which he breached to act reasonably in all matters he had to review, investigate, and supervise, including any matters relating to that of the Plaintiff.

176. Defendant Fredrickson shirked those duties regarding the Plaintiff, substantially because he was not attentive to them during business hours.

177. As a direct and proximate cause of Defendant Fredrickson's negligence per se, the Plaintiff suffered damages, exclusive of costs and attorney's fees, in excess of $75,000.00 (seventy-five thousand).

## COUNT VII - Negligence

178. Paragraphs 1-177 are realleged.

179. Throughout her investigation of the Plaintiff, Defendant Rabe did not perform a reasonably prudent investigation.

180. She charged the Plaintiff with serious allegations which could have been detected with a minimum of investigation, including that he signed a blank piece of paper that he had the complainant, Oscar Athortua sign.

181. She also charged him with forging or having Denner's employees forge attorney Denner's signature without doing any investigation of Denner's employees, or if she did she never turned over this exculpatory evidence to the Plaintiff.

182. She failed to investigate Abbott's strategy of the case, claiming she was going to get an expert witness to prove he was negligent.

183. She could not obtain such a witness as no expert would testify that Abbott had been negligent in his strategy.

184. The strategy was easily understandable but although she had been on the case for years, she did not realize it was an acceptable strategy until the day of the hearing.

185. She forsook commonsense theories in favor of remote interpretations that she originated and not even the complainant endorsed.

186. As an assistant bar counsel she owed a duty to the Plaintiff to investigate in a reasonably prudent manner, a duty she breached.

187. As a direct and proximate cause of Defendant Rabe's and Fredrickson's acts, both jointly and severally the Plaintiff was injured in excess of $75,000, exclusive of costs and attorney's fees.

## COUNT VIII - Negligent Supervision

188. Upon information and belief, Defendant Fredrickson's duties included investigation and supervision of complaints his assistant bar counsels brought before him.

189. Upon information and belief Yvonne Toyloy was one such assistant bar counsel.

190. She falsely claimed that Abbott lied to the Appeals Court in asking for continuances based on a Motion For A New Trial which he never made.

191. She misrepresented important facts to Abbott and exhibited bad faith to which Abbott complained orally to her and in writing after each time she deposed him.

192. Defendant Fredrickson did not properly investigate these complaints or upon

information and belief even have systems in place to investigate complaints to assistant bar counsels.

193. Assistant bar counsel Rabe also lied and exhibited bad faith, and again Defendant Fredrickson did nothing to investigate or supervise this.

194. He owed the Plaintiff a duty of care which he breached.

195. As a direct and proximate cause of Fredrickson's acts, the Plaintiff suffered damages in excess of $75,000, exclusive of attorney's fees and costs.

## COUNT IX - Abuse of Process

196. Paragraphs 1-195 are reallaged.

197. By not properly supervising or investigating when he was suppose to and instead concentrating on writing novels on the job, Defendant Fredrickson misused the process of a bar investigation and petition in a manner which it was not designed to accomplish.

198. A defendant can be held actionable for abuse of process even if he prevails in some aspects of the underlying actions.

199. Upon information and belief Defendant Fredrickson abused the process for the ulterior or illegitimate purpose of making it seem he was truly attentive to the investigation so that it would be less detectable he was using state time to write novels and perform novel-related tasks.

200. As the direct and proximate result of the Defendants abusing the process, the Plaintiff suffered damages in excess of $75,000.00, exclusive of costs or attorney's fees.

### COUNT X - Negligent Infliction of Emotional Distress

201. The Plaintiff realleges paragraphs 1-200.

202. The acts of the defendants were extreme and outrageous and the defendants knew, or should have known, that emotional distress to the Plaintiff was the likely result of their conduct..

203. The emotional distress suffered by the Plaintiff as a direct and proximate result of the defendants' conduct will, in all reasonable likelihood, continue from the present into the future and the same is evidenced by physical symptomology.

### DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 (b), Federal Rules of Civil Procedure, the Plaintiff demands a Trial by Jury for all of the issues pled herein so triable.

WHEREFORE the Plaintiff prays for the following relief:

a. Pursuant to Counts One through Five, judgment against Defendant Rabe in an amount to be determined by this Court for compensatory and punitive damages plus interest and costs, and attorney's fees as allowed by 42 U.S.C.A. 1988.

b. Pursuant to Counts Two through Five, judgment against Defendants Rabe and Fredrickson jointly and severally in an amount to be determined by this Court for

compensatory and punitive damages plus interest and costs, and attorney's fees as allowed by 42 U.S.C.A.1988 and all other remedies this Court deems just.

c. Pursuant to Counts Seven and Ten, judgment against Defendants Rabe and Fredrickson, jointly and severally, in an amount to exceed $75,000.00, plus interest and costs and any other remedy this Court deems just.

d. Pursuant to Counts Six, Eight, and Nine, judgment against Defendant Fredrickson in an amount to exceed $75,000.00, plus interest and costs and any other remedy this Court deems just.

Respectfully submitted,

*/s/ Richard Abbott*

Richard Abbott, Pro Se
72-11 Austin Street
Suite 321
Forest Hills, NY 11375
(917) 971-5005