UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD ABBOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-10777-NMG |
| JANE RABE and | ) | |
| MICHAEL FREDERICKSON, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO DISMISS

March 3, 2005

DEIN, U.S.M.J.

## I. INTRODUCTION

In 2001, the Massachusetts Board of Bar Overseers ("BBO") recommended that the plaintiff, Richard Abbott, be suspended from practicing law in Massachusetts for two and one-half years. Thereafter, a single justice of the Massachusetts Supreme Judicial Court ("SJC") ordered that Abbott be suspended in accordance with the BBO's recommendation. On appeal, the full SJC affirmed the single justice's decision. Subsequently, in April 2004, Abbott commenced this action, pursuant to 42 U.S.C. § 1983 and state common law, seeking to hold defendants Jane Rabe and Michael Frederickson liable for actions that they took while acting as bar counsel in the BBO's disciplinary proceedings. The matter is presently before the court on the Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 4) and the Defendants' Motion for Reasonable

Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988 (Docket No. 6).  For the reasons

detailed herein, this court recommends to the District Judge to whom this case is assigned

that both motions be ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>

### <u>Standard of Review of Record</u>

When ruling on a motion to dismiss, "a court must take the allegations in the

complaint as true and must make all reasonable inferences in favor of the [plaintiff]."

<u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  In addition, "a court may look to matters

of public record in deciding a Rule 12(b)(6) motion without converting the motion into

one for summary judgment."  <u>Boateng v. InterAm. Univ., Inc.</u>, 210 F.3d 56, 60 (1st Cir.

2000), <u>cert.</u> <u>denied</u>, 531 U.S. 904, 121 S. Ct. 245, 148 L. Ed. 2d 176 (2000).  Further-

more, "a court ordinarily may treat documents from prior state court adjudications as

public records."  <u>Id.</u>  The court may grant dismissal "only if 'it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.'"  <u>Roeder v. Alpha Indus., Inc.</u>, 814 F.2d 22, 25 (1st Cir. 1987) (quoting <u>Conley v.</u>

<u>Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957)).

Applying these principles to the instant case, and based on the allegations set forth

in Abbott's Amended Complaint (Docket No. 2) ("Compl."), the SJC decision, <u>In the</u>

<u>Matter of Richard D. Abbott</u>, 437 Mass. 384, 772 N.E.2d 543 (2002) ("<u>Abbott</u>"), and

other public records relating to that case, the facts relevant to the motion to dismiss are as

follows:

## Background

Abbott was admitted to the bar of the Commonwealth of Massachusetts on January 12, 1983.  Abbott, 437 Mass. at 386, 772 N.E.2d at 546.  In 1990 and 1991, Abbott rented office space in Newton, Massachusetts from Attorney Jeffrey Denner, and assisted Denner with some of his cases.  (Compl. ¶¶ 8, 9).  In March 1991, Oscar Atehortua, a convicted drug trafficker, retained Denner to represent him.  (Id. ¶¶ 11, 13).  Denner enlisted Abbott's assistance in seeking post-conviction relief for Atehortua (id. ¶ 11), and Abbott assumed primary responsibility for Atehortua's case.  (See id. ¶ 17); Abbott, 437 Mass. at 387, 772 N.E.2d at 546.

## The BBO Proceedings

On August 23, 1995, Atehortua wrote to the Office of Bar Counsel of the BBO[1] to complain about Abbott's representation.  See id. at 389, 772 N.E.2d at 547-48.  Atehortua claimed that Abbott had abandoned his obligation to file an appeal on his behalf and requested an investigation.[2]  Id. at 389, 772 N.E.2d at 548.  Initially, assistant bar counsel Yvonne Toyloy investigated Atehortua's complaint of attorney misconduct.  (Compl. ¶ 26).  After more than two years, during which time Toyloy never brought a formal

---

[1]  The BBO is appointed by the SJC to act "with respect to the conduct and discipline of lawyers," and "may consider and investigate the conduct of any lawyer within [the SJC's] jurisdiction ...."  S.J.C. Rule 4:01 § 5.  The BBO is responsible for appointing a chief bar counsel who, along with assistant bar counsel, is responsible for investigating, disposing of, and prosecuting matters of alleged attorney misconduct.  See id. at §§ 5(3) and 7.

[2]  Further details concerning charges against Abbott and his representation of Atehortua can be found in the SJC decision.

charge against Abbott, defendant Rabe took over as the assistant bar counsel responsible for the investigation of Abbott's alleged misconduct.  (Id. ¶ 6).  Throughout the course of the BBO proceedings involving Abbott, defendant Frederickson was serving as general counsel to the BBO and was responsible for supervising assistant bar counsel, including Toyloy and Rabe, in their work at the BBO.  (Id. ¶ 4).

On August 31, 1998, Rabe initiated a disciplinary action against Abbott by filing a petition for discipline against him.  See Abbott, 437 Mass. at 385, 772 N.E.2d at 545. Abbott moved to dismiss the petition on the grounds that bar counsel had negligently failed to interview an interpreter who had exculpatory testimony, had lost a 1994 letter from Abbott to Atehortua, and was generally biased against Abbott.  Id.  The motion to dismiss, and Abbott's subsequent motion for reconsideration, were denied.  Id.

Abbott's case was referred to a hearing committee of the BBO on January 12, 1999.  Id.  The committee held hearings on four different days between May 28, 1999 and February 8, 2000.  Id.  On June 5, 2000, the committee filed a report recommending that Abbott be suspended from the practice of law for two and one-half years.  Id.

Abbott appealed the committee's report to an appeal panel of the BBO, alleging that "the committee ignored and misstated relevant evidence and failed to understand basic appellate procedure."  Id.  The appeal panel, after reviewing the record and hearing oral argument, filed a report finding no error in the hearing committee's report and recommending that the BBO adopt the committee's recommendation for suspension.  Id. Abbott filed objections to the appeal panel's report, but on May 14, 2001, the BBO voted

to adopt the appeal panel's report and to recommend that Abbott be suspended from the practice of law for two and one-half years. <u>Id.</u> at 386, 772 N.E.2d at 545. The BBO's recommendation was based on its conclusion that Abbott had violated various disciplinary rules by neglecting Atehortua's postconviction remedies, making misrepresentations to bar counsel and Atehortua, obtaining Atehortua's signature by false pretense, and giving false testimony under oath to bar counsel. <u>Id.</u> at 386, 772 N.E.2d at 545-46. The matter was then heard by a single justice of the SJC. <u>Id.</u> at 386, 772 N.E.2d at 546.

### Abbott's SJC Appeal

On September 12, 2001, following oral argument, the single justice ordered that Abbott be suspended from the practice of law for two and one-half years. <u>Id.</u> at 386, 772 N.E.2d at 546. Abbott appealed the ruling to the full SJC "claiming, principally, that the proceedings against him violated due process and that the [BBO's] findings were unsupported by the evidence." <u>Id.</u> More specifically, Abbott claimed that his due process rights were violated because "(1) he did not receive adequate notice of all charges against him; (2) bar counsel was biased and negligent with respect to his case; and (3) the admission of a videotaped deposition of the complainant infringed on his right to confrontation." <u>Id.</u> at 391, 772 N.E.2d at 549. In addition, Abbott argued that many of the findings and credibility determinations, most notably the BBO's decision to credit Atehortua's testimony over Abbott's conflicting statements, were erroneous and lacked evidentiary support. <u>Id.</u> at 393-94, 772 N.E.2d at 550-51. However, the SJC found "substantial evidence in the record that Abbott (1) failed diligently to pursue postconvic-

tion relief for his client; (2) intentionally misrepresented the status of the case to bar

counsel; (3) misrepresented the contents of a document to his client in order to induce

him to sign it; and (4) fabricated evidence in order to mislead bar counsel," and affirmed

the suspension.  Id. at 395, 772 N.E.2d at 552.

Abbott subsequently filed a petition for rehearing in which he again argued that his

due process rights had been violated and that the BBO lacked sufficient evidence to

support its recommendation of suspension.  See Defs.' Exh. B.[3]  The SJC denied the

petition on September 6, 2002.  See Defs.' Exh. C.

### Abbott's Federal Court Claims

On April 16, 2004, Abbott initiated this action against Rabe and Frederickson.  In

his Amended Complaint, Abbott alleges that Rabe, while acting within the course and

scope of her employment as bar counsel, made unsubstantiated accusations against him,

failed to conduct an adequate investigation of the claims against him, engaged in tactics

that rendered the BBO proceedings against him unfair, and deprived him of his right to

obtain discovery and to effectively confront the complaining witness.  (See, e.g., Compl.

¶¶ 2, 40-42, 87, 89, 93-98, 124, 131, 132, 173-176, 234).  Abbott also alleges that during

his state court appeal, Rabe lied to the SJC about Abbott's conduct as counsel to

Atehortua and about matters relating to his credibility.  (See id. ¶¶ 44, 47, 60, 64, 177).

---

[3] "Defs.' Exh. __" refers to the Exhibits attached to the "Defendants' Memorandum in
Support of Their Motion to Dismiss" (Docket No. 5) ("Defs.' Memo.").

With respect to Frederickson, Abbott alleges that Frederickson, while acting within the scope of his employment as BBO general counsel, unfairly denied Abbott's request for discovery, failed to adequately investigate the charges against Abbott, allowed the disciplinary proceedings to continue based on insufficient evidence, neglected to review and supervise the work of assistant bar counsel, and neglected to investigate Abbott's complaints that assistant bar counsel were acting in bad faith.  (See, e.g., id. ¶¶ 96-98, 216, 223-24, 241, 242, 246).  Seemingly in support of his claim that Frederickson failed to properly oversee his case, Abbott states in his complaint that he learned in the "Autumn of 2003" that the Massachusetts State Ethics Commission had found, with Frederickson's agreement, that Frederickson had written novels while at work as bar counsel during "the mid 1990s through May of 2001."  (Id. at p. 1, unnumbered paragraph).  Frederickson was fined $10,000.  (Id. at pp. 1-2).[4]

Abbott further alleges in his Amended Complaint that the defendants unjustly treated him differently than other attorneys who were similarly situated.  In particular, Abbott contends that the defendants unfairly pursued a disciplinary action against him, but not against Attorney Denner or the attorney who succeeded Abbott as Atehortua's counsel, even though, according to Abbott, both attorneys neglected Atehortua's case.  (See id. ¶¶ 134-56, 171a-72, 202).  Similarly, Abbott alleges that he was unfairly treated

---

[4] There are no allegations or evidence that this conduct on the part of bar counsel actually affected the handling of Abbott's case.

more harshly than Frederickson, who was fined for violating state conflict of interest law, but was never suspended or even investigated by the BBO.  (See id. ¶¶ 158-69a).

Abbott claims that by their actions, the defendants infringed upon his civil rights, pursuant to 42 U.S.C. § 1983, by depriving him of his constitutional rights to due process (Counts I, II, III, IV and VII), free speech (Count I), confrontation (Count II), effective assistance of counsel (Counts I and II), and equal protection (Counts IV, V and VI). Additionally, Abbott contends that the defendants are liable under common law theories of negligence (Counts VIII, IX and X), abuse of process (Count XI) and negligent infliction of emotional distress (Count XII).[5]  The defendants' motion seeks dismissal of the Amended Complaint in its entirety.

Additional facts will be provided where appropriate below.

### III.  ANALYSIS

The defendants have moved to dismiss the Amended Complaint on the grounds that (1) they are entitled to sovereign immunity under the Eleventh Amendment to the Constitution, (2) they are entitled to absolute immunity, (3) Abbott's claims are barred by the doctrine of res judicata, and (4) this court lacks jurisdiction and Abbott's action is barred by the Rooker-Feldman doctrine.[6]  For the reasons detailed herein, this court

---

[5]  In his request for relief, Abbott clarifies that he intends to pursue Count I against Rabe only, Counts II - VII, IX and XII against both Rabe and Frederickson, and Counts VIII, X and XI against Frederickson only.

[6]  In his opposition to the defendants' motion to dismiss, Abbott argues that defense counsel failed to comply with Local Rule 7.1(A)(2), which requires counsel to certify that they have conferred and have attempted in good faith to resolve and narrow the issues in dispute

agrees that the motion to dismiss should be allowed because the action is barred by the

Rooker-Feldman doctrine and the defendants are protected by absolute immunity.

### A.    Federal Court Jurisdiction

Because Rooker-Feldman[7] is a "jurisdictional doctrine," see Picard v. Members of

the Employee Retirement Bd. of Providence, 275 F.3d 139, 145 (1st Cir. 2001), and is

therefore a threshold issue, the court turns first to the defendants' argument that Rooker-

Feldman bars Abbott's action.  See Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27,

33 (1st Cir. 2004) ("Often the first resort of federal judges is to the Rooker-Feldman

doctrine – and peculiarly so in case of disbarment, revocations of licenses, and the like."),

cert. denied, --- U.S. ---, 125 S. Ct. 110, 160 L. Ed. 2d 120 (2004).  "The Rooker-

Feldman doctrine prohibits federal district and circuit courts from reviewing state court

judgments."  Sheehan v. Marr, 207 F.3d 35, 39 (1st Cir. 2000).  "Review of such judg-

ments may be had only in [the Supreme] Court."  District of Columbia Court of Appeals

v. Feldman, 460 U.S. 462, 482, 103 S. Ct. 1303, 1315, 75 L. Ed. 2d 206 (1983).  Conse-

---

before filing a motion.  The representations of both parties demonstrate that there was sufficient discussion between counsel prior to the filing of the motion to dismiss to constitute compliance with the Local Rules.  See "Plaintiff's Memorandum in Support of His Objection of Defendants' Motion to Dismiss and for Attorney's Fees" (Docket No. 11) ("Pl.'s Memo.") at 2-3; Affidavit of Charles M. Wyzanski (Docket No. 7) ¶¶ 6, 7.  The plaintiff further argues that the defendants have failed to address, either in an answer or in their motion to dismiss, the substance of his constitutional and tort claims.  However, the defendants have filed an appropriate motion to dismiss, pursuant to Fed. R. Civ. P. 12(b), and do not need to address these claims in any more detail at this time.

[7]  The Rooker-Feldman doctrine is derived from two Supreme Court cases: Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

quently, this court may not entertain Abbott's claims if "the district court is in essence being called upon to review the state-court decision" affirming the adoption of the BBO's recommendation that Abbott be suspended from law practice in Massachusetts for two and one-half years. Id., 460 U.S. at 482 n. 16, 103 S. Ct. at 1315 n. 16.

Abbott argues that many of the precise issues pled in his Amended Complaint were not raised previously before the BBO or the SJC. Assuming that were true, "Rooker-Feldman does not depend on what issues were actually litigated in the state court . . . ." Maymo-Melendez, 364 F.3d at 33. Even "[w]here a party did not actually present its federal claims in state court, Rooker-Feldman forecloses lower federal court jurisdiction over claims that are 'inextricably intertwined' with the claims adjudicated in a state court." Sheehan, 207 F.3d at 39-40. "A federal claim is inextricably intertwined with the state-court claims 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Id. (quoting Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999)). In other words, Abbott's claims must be dismissed under Rooker-Feldman if the relief he seeks "would effectively overturn the state court's decision." Maymo-Melendez, 364 F.3d at 33. In the instant case, it clearly would.

Although couched in terms of constitutional violations, Abbott's claims unequivocally challenge the procedures employed in investigating the complaint against him and the conclusion reached by the BBO and reviewing courts that his conduct warranted the temporary suspension of his license. These are the same issues addressed by the SJC, which concluded that his due process rights had not been violated and that

the BBO's findings were supported by the evidence.[8]  See Abbott, 437 Mass. at 386, 395,

772 N.E.2d at 546, 552.  Where, as here, Abbott has "effectively asked the district court

to review the [SJC's] judgment to disbar him," his claims are "blocked from

consideration by the Rooker-Feldman doctrine."  Levin v. Attorney Registration &

Disciplinary Comm'n of the Supreme Court of Illinois, 74 F.3d 763, 766-67 (7th Cir.

1996) (district court lacked subject matter jurisdiction under Rooker-Feldman over

constitutional challenge to attorney's disciplinary proceedings where claims were

inextricably intertwined with state court decision to disbar him), cert. denied, 518 U.S.

1020, 116 S. Ct. 2553, 135 L. Ed. 2d 1072 (1996).  Since Abbott's constitutional claims

are "inextricably intertwined" with the state court's decision regarding his disbarment,

"the district court is in essence being called upon to review the state court decision.  This

the district court may not do."[9]  Feldman, 460 U.S. at 482 n.16, 103 S. Ct. at 1315 n.16.

---

[8]  The close relationship between the SJC decision and the instant case is further evidenced by the fact that most of the factual allegations are the same in both proceedings.  For example, Abbott claimed in both state and federal court that "bar counsel was biased and negligent with respect to his case," that "the admission of a videotaped deposition of the complainant infringed on his right of confrontation," and that many of the BBO's findings and credibility determinations were erroneous and unsupported by the evidence.  See Abbott, 437 Mass. at 391, 393, 772 N.E.2d at 549-50; Compl. ¶¶ 82a-89, 103, 106, 118a, 205a-215, 227-235.

[9]  Abbott argues that he could not have raised the equal protection claim set forth in Count V of the Amended Complaint during the state court proceedings because the facts giving rise to the claim relating to Frederickson's fine by the State Ethics Commission were not made public until 2003.  See Pl.'s Memo. at 8-9.  As an initial matter, it should be noted that Abbott's other equal protection claims with respect to the treatment of Atehortua's other counsel (Counts IV and VI) are based on information known to Abbott prior to the conclusion of the state proceedings, and thus his equal protection argument could be presented to the state court.  Furthermore, the facts of Frederickson's case do not remotely resemble Abbott's because, among other reasons, Frederickson was not representing a specific defendant in a criminal proceeding with the

See also Stern v. Nix, 840 F.2d 208, 211-12 (3d Cir. 1988) (under Rooker-Feldman,

district court lacked subject matter jurisdiction over attorney's constitutional challenge to

a state court order to disbar him), cert. denied, 488 U.S. 826, 109 S. Ct. 77, 102 L. Ed. 2d

53 (1988); Patmon v. Michigan Supreme Court, 224 F.3d 504, 509-10 (6th Cir. 2000)

(under Rooker-Feldman, district court lacked jurisdiction over attorney's constitutional

challenge to his suspension from law practice where the claims were inextricably

intertwined with state judicial determinations).

     The Rooker-Feldman "doctrine is widely used by the federal court to prevent end-

runs against state judgments." Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir.

2003). In the instant case, Abbott's attempt at such an end-run should fail and the motion

to dismiss should be allowed due to the Rooker-Feldman doctrine.[10]

---

consequent obligations of counsel. Most importantly, however, Abbott's argument ignores the
fact that he was free to pursue whatever remedies might be available to him in the state system for
such allegedly newly discovered evidence. The date when he learned of Frederickson's fine does
not alter the fact that Abbott is seeking to have this court overturn the state court decisions
adopting and affirming the BBO's recommendation, and that Rooker-Feldman bars the claim.

    [10] Res judicata, on which the defendants also rely in support of their motion to dismiss, is
similar to Rooker-Feldman in that it "embodies a bedrock respect for prior judgments." Maymo-
Melendez, 364 F.3d at 33. See also Sheehan, 207 F.3d at 40 n.5 (res judicata has a "close
affinity" to Rooker-Feldman). However, Rooker-Feldman is a "broader and blunter version" of
res judicata and a third similar doctrine, the federal full faith and credit statute, and federal judges
regularly look first to the Rooker-Feldman doctrine "to rebuff collateral attacks on prior state
court judgments without purporting to apply the technical preclusion rules of res judicata." Id.
Because Rooker-Feldman compels dismissal of Abbott's claims in this case, it is not necessary for
this court to address the defendants' res judicata argument at this time.

## B.    __Immunity__

The defendants, in their motion to dismiss, also argue that they are entitled to

sovereign immunity under the Eleventh Amendment or, alternatively, to absolute

immunity.  While, for the reasons detailed above, this court believes the Rooker-Feldman

doctrine is controlling, even if this court had jurisdiction over Abbott's claims, the court

concludes that the defendants would be absolutely immune from liability for acts

committed within the scope of their responsibilities as bar counsel to the BBO, although

they would not be entitled to sovereign immunity.

### 1.    __Sovereign Immunity__

"The Eleventh Amendment bars a suit against state officials when 'the state is the

real, substantial party in interest.'" Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S.

89, 101, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984) (quoting Ford Motor Co. v. Dep't of

Treasury of Indiana, 323 U.S. 459, 464, 65 S. Ct. 347, 350, 89 L. Ed. 389 (1945)).

Accordingly, "absent waiver by the State or valid congressional override," the Eleventh

Amendment prohibits suits for damages against state officials acting in their "official

capacity."[11] Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed.

2d 114 (1985).  See also Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d

---

[11]  The Eleventh Amendment "is an independent limitation on all exercises of Art. III
power ...."  Pennhurst, 465 U.S. at 120, 104 S. Ct. at 919.  Therefore, it applies equally to all
claims over which the federal court may exercise jurisdiction.  See id. at 121, 104 S. Ct. at 919
("neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh
Amendment.").

698, 700 (1ˢᵗ Cir. 1995).  It does not, however, bar personal capacity suits which "seek to

impose personal liability upon a government official for actions he takes under color of

state law."  Graham, 473 U.S. at 165, 105 S. Ct. at 3105.

"The [BBO] and the Office of Bar Counsel are both entities created by court rule

to support the operation of the Courts of Massachusetts through regulation of the Bar.  As

such, they are arms of the state, subject to the Eleventh Amendment bar against suits for

money damages in federal court."  Johnson v. Bd. of Bar Overseers of Massachusetts,

324 F. Supp. 2d 276, 286 (D. Mass. 2004).  However, Abbott is seeking money damages

against Rabe and Frederickson "in their individual capacities."  (Compl. ¶ 2).  Therefore,

the defendants are not entitled to sovereign immunity under the Eleventh Amendment.

See Johnson, 324 F. Supp. 2d at 286 (application of Eleventh Amendment to suit by an

attorney challenging ongoing disciplinary proceedings leaves only suit against BBO chair,

the special hearing officer and bar counsel for money damages in their individual

capacities); Wang, 55 F.3d at 701 (Eleventh Amendment barred suit against Board and its

members acting in their official capacities, but was not relevant to "individual capacity"

claims).

## 2.    **Absolute Immunity**

Although the Eleventh Amendment does not apply, this court concludes that Rabe

and Frederickson are entitled to absolute immunity as they are being sued for acts they

committed within the scope of their official responsibilities.  "[T]he [Supreme] Court has

recognized that 'there are some officials whose special functions require a full exemption

from liability.'" Bettencourt v. Bd. of Registration in Med., 904 F.2d 772, 782 (1st Cir.

1990) (quoting Butz v. Economou, 438 U.S. 478, 508, 98 S. Ct. 2894, 2911-12, 57 L. Ed.

2d 895 (1978)). "Such officials include, among others, judges performing judicial acts

within their jurisdiction, prosecutors performing acts intimately associated with the

judicial phase of the criminal process, and certain 'quasi-judicial' agency officials who,

irrespective of their *title*, perform *functions* essentially similar to those of judges or

prosecutors, in a setting similar to that of a court." Id. (internal citations and quotations

omitted). Significantly, "[s]tate officials performing prosecutorial functions – including

their decisions to initiate administrative proceedings aimed at legal sanctions – are

entitled to absolute immunity as well." Wang, 55 F.3d at 701. Thus, the defendants are

absolutely immune from suit if, in their roles as bar counsel for the BBO during the

course of Abbott's disciplinary proceedings, they were performing functions "analogous

to those of a prosecutor."[12] Butz, 438 U.S. at 515, 98 S. Ct. at 2915.

The BBO and the Office of the Bar Counsel were created by the SJC "to

investigate and evaluate complaints against lawyers." Johnson, 324 F. Supp.2d at 282

(citing Mass. S.J.C. Rule 4:01). Bar counsel are responsible for, among other things,

investigating "all matters involving alleged misconduct by a lawyer coming to his or her

---

[12]  Absolute immunity protects persons performing functions analogous to those of a
prosecutor both from claims for damages pursuant to 42 U.S.C. § 1983, see Imbler v. Pachtman,
424 U.S. 409, 431, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976), and from state common law
claims. See Chicopee Lions Club v. Dist. Attorney for the Hampden Dist., 396 Mass. 244, 251,
485 N.E.2d 673, 677 (1985) ("we hold that the scope of prosecutorial immunity under State
common law ... is at least as broad as under § 1983 ....").

attention from any source," and for prosecuting "all disciplinary proceedings before hearing committees, special hearing officers, the [BBO], and [the SJC]." Mass. S.J.C. Rule 4:01 § 7(1) and (3). At all relevant times, Rabe was acting as "the assistant bar counsel who continued to investigate a complaint against Plaintiff . . . ." (Compl. ¶ 6). Consistent with her responsibilities as bar counsel, Rabe brought disciplinary charges against Abbott, interviewed the complaining witness, conducted discovery, filed motions in preparation for Abbott's disciplinary hearing, acted as the prosecuting attorney at the hearing, and represented the BBO at Abbott's SJC appeal. (See Compl. ¶¶ 47, 75-77, 87, 88, 93, 95, 97, 100). See also Abbott, 437 Mass. at 384, 772 N.E.2d at 544 (listing Rabe as the Assistant Bar Counsel participating in the appeal). These activities were within the scope of Rabe's duties as bar counsel to the BBO and are analogous to those of a prosecutor. Therefore, she is immune from Abbott's claims against her. See Johnson, 324 F. Supp. 2d at 287 (defendant bar counsel entitled to absolute immunity based on his role as prosecutor in a BBO action against the plaintiff).

Similarly, according to the Complaint, at all relevant times, Frederickson was responsible for the "investigation and supervision of complaints his assistant bar counsels brought before him," and for the "supervision of assistant bar counsels Yvonne Toyloy and Defendant Jane Rabe in their work at the BBO."[13] (Compl. ¶¶ 4, 237). Like Rabe,

---

[13] The defendants argue that Frederickson in fact had no supervisory role over bar counsel, and that even if he did, liability under 42 U.S.C. § 1983 cannot be premised simply on the failure to exercise proper supervisory control. See Defs.' Memo. at 7 n.13. Construing the allegations of the Amended Complaint liberally in Abbott's favor, as this court must on a motion

Frederickson's duties were analogous to those of a prosecuting attorney, albeit one with supervisory responsibilities. Consequently, Rabe and Frederickson are absolutely immune from the instant suit even if, as Abbott contends, they acted unfairly, in bad faith or were biased against him. See Wang, 55 F.3d at 702 (Board and its counsel remain absolutely immune from "claims arising out of their judicial, quasi-judicial and/or prosecutorial functions, even though they acted maliciously and corruptly.") (internal quotations and citation omitted).

Abbott attempts to avoid this conclusion by arguing that Rabe was acting outside the scope of her role as prosecutor by acting as an investigator and as a witness in the proceedings against him. See Pl.'s Mem. at 6-7. However, according to the allegations of the complaint, Rabe's investigative work involved witness interviews, taking a deposition and obtaining a subpoena for Abbott's computer (see Compl. ¶¶ 87, 95, 100), all actions which are ordinary activities of a prosecutor conducting discovery. See Kalina v. Fletcher, 522 U.S. 118, 126, 118 S. Ct. 502, 507, 139 L. Ed. 2d 471 (1997) (absolute immunity available for acts undertaken by a prosecutor "in evaluating evidence and interviewing witnesses as he prepares for trial"). Similarly, although Abbott complains

---

to dismiss, mandates that for purposes of the instant motion Frederickson must be deemed to have had supervisory responsibility over bar counsel, and that his duties included the responsibility to investigate complaints that his assistant bar counsel brought before him. (Compl. ¶¶ 4, 223, 237). Moreover, because Abbott has alleged that he was harmed by Frederickson's failure to conduct an adequate investigation, by his refusal to allow Abbott certain discovery, and by Frederickson's failure to treat Abbott equally as other similarly situated attorneys (e.g., Compl. ¶¶ 97, 216, 170), his claims appear to be premised on more than a simple failure to properly supervise.

that Rabe "was in essence testifying as a witness to her shoddy investigation and theories" (Pl.'s Mem. at 7), a review of the Complaint again establishes that Abbott is, in fact, challenging the merits of Rabe's arguments, made as counsel, and her conclusions about the evidence. Abbott is not contending that Rabe presented herself as a fact witness to Abbott's interactions with Atehortua. (See, e.g., Compl. ¶¶ 40-41, 122-24 and 131, cited by Abbott, which challenge Rabe as having "accused the Plaintiff of having Atehortua sign a blank piece of paper," charge Rabe with "inventing" a "theory" about Atehortua signing a blank document, and object to Rabe's failure to interview potential witnesses). "The requirement that conduct protected by absolute immunity falls within the outer perimeter of the official's line of duty is read fairly expansively. The conduct in question need only be more or less connected to the general matters committed by law to his or her control or supervision and not manifestly or palpably beyond his or her authority." Ricci v. Key Bancshares of Maine, Inc., 768 F.2d 456, 462 (1st Cir. 1985) (internal punctuation and citations omitted). In the instant case, Abbott is complaining of actions undertaken by Rabe which fall squarely within her duties as bar counsel and prosecutor. Therefore, Rabe remains absolutely immune from liability for Abbott's claims arising out of these acts.

### C.    Attorney's Fees

The defendants have moved for an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988. "[T]he Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, [authorizes] the district courts to award a reasonable attorney's fee to

prevailing parties in civil rights litigation." Hensley v. Eckerhart, 461 U.S. 424, 429, 103
S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983). However, while "a prevailing plaintiff is
presumptively entitled to fee-shifting in such a case, a prevailing defendant is entitled to
similar largesse only if [the defendant] can establish that the plaintiff['s] suit was totally
unfounded, frivolous, or otherwise unreasonable." Casa Marie Hogar Geriatrico, Inc. v.
Rivera-Santos, 38 F.3d 615, 618 (1st Cir. 1994) (citations omitted). The defendants have
made the requisite showing in this case.

As described above, Abbott apparently has used every available means of appeal,
except an appeal to the Supreme Court, to challenge the BBO's disciplinary proceedings
against him. Nevertheless, Abbott is impermissibly attempting to use the federal forum to
overturn decisions by the BBO and the SJC regarding his two and one-half year
suspension from law practice in Massachusetts. The fact that this court lacks jurisdiction
pursuant to the Rooker-Feldman doctrine is clear. Moreover, even if the court had
jurisdiction, the defendants have shown that they are absolutely immune from liability.
Abbott's present action, therefore, is entirely groundless.

Although the fact that a plaintiff has proceeded pro se might ordinarily persuade
the court not to assess fees against him, in this case Abbott is an attorney who has been
admitted to practice law in Massachusetts and apparently in Rhode Island. (See Compl. at
second ¶ 144 (plaintiff has been involved in "thousands of cases" in "Massachusetts,
Rhode Island, federal and other state courts")). Therefore, Abbott should have recog-
nized the obstacles to his claims. Compare Hughes v. Rowe, 449 U.S. 5, 15, 101 S. Ct.

173, 179, 66 L. Ed. 2d 163 (1980) (limitations on fee shifting "apply with special force in actions initiated by uncounseled prisoners" who should not be punished for failing to recognize "subtle factual or legal deficiencies in [their] claims.").  Moreover, none of the doctrines that the defendants raised in support of their motion to dismiss is novel, and two of these doctrines – Rooker-Feldman and absolute immunity – entirely foreclose the possibility that the plaintiff could succeed on any of his claims.  Compare Bercovitch v. Baldwin Sch., Inc., 191 F.3d 8, 11-12 (1st Cir. 1999) (suit not frivolous, unreasonable or without foundation where several issues raised by complaint were of first impression). These factors further support this court's conclusion that Abbott's claims are frivolous.

Finally, the court notes that prior to filing the motion to dismiss, defendants' counsel notified Abbott of the deficiencies in his claims, and referred him to the Johnson case in which the district court ruled that bar counsel for the BBO was absolutely immune from suit where plaintiff claimed that bar counsel and others had violated her civil rights in connection with BBO disciplinary proceedings against her.  324 F. Supp.2d at 287.  See also Affidavit of Charles M. Wyzanski (Docket No. 7) ("Wyzanski Aff.") ¶¶ 6, 7 (describing defense counsel's contacts with plaintiff).  Defense counsel further notified plaintiff that the defendants would seek attorneys' fees and costs if Abbott did not agree to dismiss his action against them.  Id. ¶ 8.  Consequently, Abbott was on notice that his lawsuit lacked merit.

The defendants are seeking $2,750 in attorneys' fees, plus $23 to cover the cost of faxing documents to Abbott in New York.  Id. ¶ 11.  The attorneys' fees are based on the

eleven hours of work that it took defense counsel to review the thirty-seven page Amended Complaint, discuss the claims with Abbott, draft the defendants' motions to dismiss and for attorneys' fees, draft the affidavit in support of the motion for fees, and draft a fifteen-page memorandum in support of the motion to dismiss. Id. ¶ 10. They do not include fees for defense counsel's appearance at either of two hearings that this court scheduled for argument on the defendants' motion to dismiss. At the first hearing, which occurred on January 7, 2005, defense counsel was present and prepared to argue the motion, but plaintiff failed to appear. Consequently, defense counsel had to return for a second hearing, which this court scheduled pursuant to the parties' joint motion for rehearing, and which took place on January 28, 2005. Defendants are entitled to be compensated for these hearings as well.

The court agrees with defense counsel that the amount of time that defense counsel spent to draft documents and to discuss the suit with the plaintiff was reasonable. The court also agrees that defense counsel's proposed rate of $250 per hour is reasonable in light of his level of experience and other attorneys' fee awards. See id. ¶¶ 3-5. Defendants' counsel is currently an Assistant Attorney General in Massachusetts. He has held a number of law-related faculty appointments at law schools and universities in the Boston area, and has practiced law in both the private and public sectors since 1972. See id. ¶¶ 2, 3. Furthermore, in his affidavit, defense counsel stated that his billing rate fifteen years ago, when he was last in the private sector, was $185 per hour, and that during the time period that he has worked in the Massachusetts Attorney General's office,

opposing counsel in other matters have been awarded fees of at least $250 per hour.  See id. ¶¶ 4, 5. Upon consideration of these facts, and the fact that defense counsel has been able to achieve complete relief for his clients within a very short amount of time, this court finds that the fee request is reasonable.  See Hensley, 461 U.S. at 429-30 & n.3, 103 S. Ct. at 1937 & n.3 (court must determine fee award based on the facts of the particular case, and may consider factors including, but not limited to, the time and labor required, the customary fee, the results obtained, the experience and ability of the attorney, and awards in similar cases).

This court further finds that it is both fair and reasonable that the defendants be awarded attorneys' fees, at the same rate of $250 per hour, for the time that defense counsel spent preparing for and attending court, on both occasions when hearings were scheduled, in connection with the oral argument on the motion to dismiss.  Accordingly, this court recommends that "Defendants' Motion for Reasonable Attorneys' Fees and Costs" (Docket. No. 6) be granted and that defense counsel be allowed to supplement his affidavit to include the time involved in preparing for and attending the scheduled court hearings.

## IV.  CONCLUSION

For the reasons stated herein, this court finds that it lacks subject matter juris-diction over the plaintiff's action, and that, even if the court had jurisdiction, the defendants are absolutely immune from suit.  In addition, this court concludes that the defendants are entitled to reasonable attorneys' fees and costs, that the defendants'

proposed fee award is reasonable, and that the defendants should be entitled to additional fees equivalent to the reasonable cost of their counsel's preparation for and appearance in court to argue the motion to dismiss. Accordingly, this court recommends to the District Judge to whom this case is assigned that the "Defendants' Motion to Dismiss" (Docket No. 4) and the "Defendants' Motion for Reasonable Attorneys' Fees and Costs" (Docket No. 6) be ALLOWED, that the defendants be permitted to supplement the record to support an additional attorney's fee award to cover counsel costs relating to oral argument, and that the Amended Complaint be dismissed with prejudice.[14]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[14] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).