UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 MAR 11  P 2: 22

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| RICHARD ABBOTT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | | NO. 04-10777-NMG |
| JANE RABE and | ) | |
| MICHAEL FREDERICKSON, | ) | |
| Defendants | ). | |

## PLAINTIFF'S OBJECTION TO THE MAGISTRATE'S REPORT AND
## RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

### Introductory Statement

This is a case about the Plaintiff, attorney Richard Abbott, who was denied due process and fundamental rights, including the right to discovery, to play on an even field. He was deposed four times , two times each, by two different bar counsel, Yvonne Toyloy, an experienced attorney who investigated the complaint from the outset for over two years and could find no evidence to bring formal charges. Successor bar counsel, defendant Jane Rabe then took over the case and only by fabricating evidence was she able, upon information and belief, to convince the unsuspecting and negligent supervisor, defendant Michael Fredrickson, to go forward with the case.

It is uncontested that attorney Abbott received no discovery. His request for nine simple interrogatories was denied. Denied by the very agency he was fighting. This had a chilling effect.

The opposition, the Board of Bar Overseers not only deposed him four times but also subpoenaed all his files when they subpoenaed his computer. They even subpoenaed

his printer because it also had memory. Despite all their investigations, they could not find one piece of demonstrative evidence to implicate him.

Despite the case being so weighted in favor of the BBO, the hearing committee decided not to believe any of the testimony of the complainant, Oscar Atehortua. They called his testimony "confused and confusing" and wrote that they would not credit any of it (except as it turned out when they had to to "prove" the BBO's case and thus further denying the Plaintiff due process by going against their own ruling).

Finally, bar counsel Rabe represented she would call an expert witness to prove the Plaintiff was negligent. With all the funds of the state behind her, she could not produce an expert witness to testify that Abbott was negligent. In response to Rabe's representations, Abbott called an expert witness who testified that Abbott did an exemplary job. Over objection he was prevented from testifying that Abbott did not commit any disciplinary violations.

The Plaintiff's case is new and unique. Seventy-five percent (75%, nine of twelve counts) were never litigated before in any court.


Argument

The magistrate's recommendation was both factually and theoretically inaccurate. Abbott contended that the Massachusetts SJC did not provide him the minimal safeguards guaranteed by federal law. Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 n. 10 (1974). The magistrate claims that Abbott already had his day in state court and his issues are barred by res judicata. This argument is erroneous for two reasons. Due process is not to be determined by state law. Cleveland Bd. Of Educ. V. Loudermill, 470 U.S. 532 (1985).

Perhaps more importantly, res judicata only attaches if at the previous hearings the petitioner had a fair and impartial hearing. It has been firmly established for close to forty years in a well known case that without reciprocal discovery there can not be a fair hearing. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1184, 10 L. Ed. 2d 215 (1963).

The Plaintiff's case was considered quasi criminal due to the fabricated charges of defendant Rabe who accused the Plaintiff of having the complainant, Oscar Atehortua, sign a blank piece of paper which the Plaintiff allegedly later filled in to his benefit. Even Atehortua testified that never happened. Nor did Atehortua claim Abbot was involved in the other criminal charge, he allegedly forged attorney Denner's signature. In short, the two most serious and criminal charges were not made by the convicted drug dealer complainant but by BBO bar counsel Rabe.

If the defendant is obligated to turn over discovery, (as Abbott was) the prosecutors must face reciprocal obligations. Wardius v. Oregon, 412 U.S. 470 (1973).

Massachusetts has recently recognized that discovery is so vital, they will overturn thirty year convictions if discovery has not been properly complied with. Commonwealth v. French, 357 Mass. 356, 259 NE2d 195 (1970).

In 1967 French and allegedly five co-defendants were implicated in the murder of Teddy Deegan.    In their trial all six were found guilty largely on the word of the notorious Joseph "The Animal" Barboza who served only one year. He confessed to murdering twenty-six people. The six co-defendants either received life, or in some instances, the death penalty which was later vacated. Limone v. Mass. 408 U.S. 936 (1972).

-3-

In the present case ,defendants' counsel contends, incorrectly,  that Plaintiff has had six bite at the apple.  The magistrate correctly identified four bites at the apple. For the sake of argument, let's concede the many bites at the apple. But six bites, plus four bites, plus zero discover leaves nothing.

In <u>French</u>, he and his co-defendants had many bites, including two additional appearances before the SJC.   <u>Commonwealth v. Limone</u>, 410 Mass. 364 (1991); <u>Commonwealth v. Salvati</u>, 420 Mass. 499 (1995), 650 N.E. 2d 782 (1995), and all surviving defendants were granted a motion for a New Trial before a judge other than the trial judge and an appeal from that pursuant to M.G.L. c.278 s. 33E.   The original appeal, by a respected defense attorney, contained over eighty (80) issues.  The SJC and Superior Court judges reached the same conclusions - there wasn't great evidence against the co-defendants but Animal Barboza was competently cross-examined for six and one half days at trial in 1970.  The judgment stands.

French in an affidavit admitted to being one of the trigger men but always said Limone, Grieco, and Salvatti were innocent and not even in the alley at the time of the shooting.  Thirty -three years after being incarcerated French and Limone were released. This was due to a federal suit against the FBI.  Documents revealed that the state knew all along that Barboza was fabricating his story concerning the four men who claimed their innocence.  The FBI also knew of their innocent and the hit on Deegan.  The so called strategy of the day was to let things proceed at a low level without hint of knowledge in the hopes of catching some high level criminals.  This had dire consequences on the innocent, including Mr. Grieco dying in jail.

-4-

The point is that Mr. French et al could have had fifty, a hundred bites at the appellate apple over thirty, forty, sixty years, however long the last defendant survived, and without the withheld discovery they would never have been freed, in this case not by the SJC but by Superior Court judge Margaret Hinkle who upbraided the commonwealth and the FBI, the very people who knew of the travesty but all along complained that the defendants were receiving too many bites at the apple. In addition to the local papers carrying the story, it made the national press. "Conviction Thrown Out in Mob Murder Case", AP report, The New York Times, January 19, 2001 p.A29; "Charges Nixed for 2 Claiming FBI Frame-up," AP report, USA Today, January 31, 2001, p.5A.

In the <u>French</u> case there were suspicions all along about the veracity of the Animal Barboza's testimony but until newly found discovery, no verification. In the present case there is documented proof of the defendant Rabe lying. Additional discovery is warranted and required to prove further violations of the plaintiff's rights. He suspects the BBO violated their own internal regulations, a due process violation.

"Once an agency has seen fit to promulate regulations, it most comply with their regulations". "Agency regulations have the 'force of law'". <u>Royce v. Commissioner of Corrections</u>, 390 Mass. 425, 427, 456 N.E.2d 1127, 1128 (1983), quoting <u>Purity Supreme, Inc.v. Attorney General,</u> 380 Mass.782, 768-769, 407 N.E.2d 297 (1980).

Finally, res judicata can not attach as many of the issues the plaintiff is raising in his federal suit were and could not have been raised before the SJC. None of the equal protection claims, the First Amendment claim, or negligence claims were raised before the SJC.

It is uncontested that Abbott argued before the SJC in 2002. There for the first time he learned, when defendant Rabe mentioned it in her argument, that no action had been taken on Atehortua's Motion for a New Trial. That means, upon information and belief, attorney John Doe, Atehortua's successor counsel, had not acted on the pending Motion for over three years. On the record Rabe stated she would turn attorney Doe's name over to Abbott. She never did. The plaintiff believes that was because he would have testified, as did the expert witness, that Abbott did a good job.

Defendant Fredrickson's wrong doings were not made known to the public until the autumn of 2003. It wasn't until 2004 that life circumstances allowed the plaintiff to file a federal diversity suit. In addition, Abbott's claim of pattern of equal protection denial would not have been a pattern if only attorney Denner had been mentioned.

The magistrate claims that Abbott could have gone back to the SJC once he discovered Fredrickson's wrong doings. But exhaustion of state remedies is not a civil rights suit requirement. The plaintiff is not required to exhaust his claims before the state or agency that is denying him his fundamental rights. Patsy v. Board of Regents, 457 U.S. 496, 506 (1982) (holding that federal court would be less susceptible to the existing defects in the fact-finding process in state courts."; Barry v. Bacht, 443 U.S. 55 (1979); McNeese v. Board of Education, 373 U.S. 668 (1963).

In theory, there is no reason why the state should not be judged competed to hear a federal issue. Unfortunately, experience has shown they are less than capable. "The only conceivable basis for finding ... a right to litigate a federal claim in a federal district court is hardly a legal basis at all, but rather a general distrust of the capacity of the state courts

to render correct decisions on constitutional issues." <u>Allen v. McCurry</u>, 449 U.S. 90, 103.

Rooker v. Feldman

The magistrate and the defendants counsel both rely on the "inextricably intertwined" theory cited in <u>Sheehan v. Marr</u>, 207 F.3d 35, 39 (1st Cir. 2000). "A federal claim is inextricably intertwined with the state-court claims 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" <u>Sheehan</u> at 39-40, quoting <u>Hill v. Town of Conway</u>, 193 F.3d 33, 39 (1st Cir. 1999). In <u>Sheehan</u>, the court reversed the summary judgment against Sheehan on his ADA claim noting that it cannot be regarded as inextricably intertwined with the state court's involuntary retirement determination. "To be sure, there is some overlap: in both proceedings it is necessary to consider Sheehan's medical condition, the essential functions of his job, and Sheehan's inability to perform those functions..." at 40 citing <u>Thomas v. Contoocook Valley School District</u>, 150 F.3d 31, 38 (1st Cir. 1998) (discharged entitled to litigate disability discrimination even after state court finding that her termination was for cause).

Another problem with the magistrate's report is that the majority of the Plaintiff's claims in federal court were never before the state court. Four of the seven constitutional claims (three equal protection and the First Amendment) were never argued before the state court. All five of the negligence claims are also exclusive to the federal suit as they are based on federal diversity. In short, nine of the twelve claims or seventy-five percent are unique to the federal suit.

The magistrate asserts that under <u>Rooker-Feldman</u> the Plaintiff's claims must be

dismissed since the relief he seeks "would effectively overturn the state court's decision". This is patently untrue as all of the negligence claims ask for money damages, a verdict that could be entered without finding that the state should reinstate the Plaintiff or that they were wrong to suspend him (the plaintiff has already served his suspension. It is unclear how it is possible to reinstate him). Even a positive outcome on the constitutional and civil rights issues do not necessarily mean the state court's decision would be overturned. There are a lot of possibilities. For instance, it is not unprecedented for a court to let a verdict stand but let the decision stand as notice that in the future, say, reciprocal discovery must be provided, bar counsel can not be a witness, bar counsel can not lie in their petition, better supervision is mandated as are First Amendment and right of confrontation protections.

Even the recent case both magistrate and defendants' counsel rely upon, <u>Johnson v. Bd. Of Bar Overseers of Massachusetts</u>, 324 F. Supp. 2d 276 (D. Mass. 2004), holds for the plaintiff, in at least seventy-five percent of his claims. "Were Johnson not engaged in state administrative proceedings involving the same rules as those cited in her complaint, <u>Feldman</u> might well permit her to challenge the constitutionality of those rules in federal court." The plaintiff is not involved in any concurrent state proceedings. Three quarters of his federal claims were never raised in state court.

"When a state action does not reach the mertis of a plaintiff's claims, then <u>Rooker-Feldman</u> does not deprive the federal court of jurisdiction." <u>Whitehead v. Reed</u>, 1555 F.3d 671, 673-674 (3rd Cir. 1998). In holding that res judicata does not apply if new issues are litigated, "The court went onto state Rooker-Feldman does not apply unless

there is state court aadjudication." Cruz v. Melecio, 204 F.3d 14, n.5 (1st Cir.2000), citing Davis v. Bayless, 70 F.d 367, 376 (5th Cir.). Further, even the constitutional claims that were raised, were federal issues with federal cites. As cited earlier, due process is not to be determined by state law, Loudermill; the states are often incapable, in practice of fairly adjudicating 1983 type claims, Allen.

Absolute immunity

The magistrate has altered a "quite sparing" concept, absolute immunity, Forrester v. White, 484 U.S. 219, 224 (1988) and turned it into an expansive one. It is not enough to shout "Absolute Immunity" "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns v. Reed, 500 U.S. 478, 487,111 S. Ct. 1934, 1939 (1991), see also Antoine v. Byers and Anderson, Inc., 113 S.Ct. 2166, 2167-70 n.4 (1993) see also Cignetti v. Healey, 89 F. Supp. 2d 106, 114 (D. Mass. 2000).

Cignetti held "…it is well settled that prosecutors do not enjoy absolute immunity as to conduct that is merely administrative or investigative." at 116, citing Buckley v.Fitzsimmons, 509 U.S. 254, 269 (1993). Both defendants preformed investigate functions, rather shoddily. The BBO failed to timely interview an impartial witness exculpatory witness who would have exonerated Abbott of all charges. Rabe failed to interview witnesses in Denner's office who would have confirmed that Abbott never asked them or any one in the office to forge Denner's signature (perhaps she did interview these witnesses. As the Plaintiff was not allowed discovery he was denied this

exculpatory evidence). "This court does not look favorably upon arguments founded on misrepresentations of the record". Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000).

Kalina v. Fletcher

The magistrate cited the seminal case of Kalina v. Fletcher, 522 U.S.118, 118 S.Ct. 502, 510 (1997) but she did not cite the main holding. The chief finding of Kalina was that an exception existed to the absolute immunity doctrine. Kalina and it's holding is quite similar to the case at bar. Kalina held that when a lawyer acts as a witness there is no absolute immunity. "Testifying about facts is the function of a witness, not of the lawyer." at 510.

Here, as in Kalina, it was clear the defendant did not take the stand. Rather, the prosecutor filled out a probable cause affidavit. The prosecutor argued that this was customary in Washington State and to hold that a prosecutor/witness has no absolute immunity would have a "chilling effect" on prosecutions. The Supreme Court was not persuaded. There is no "chilling effect" when a prosecutor, as a witness, lies in her documents. In fact, 1983 may provide an additional remedy when the respondent is a complaining witness, at 510.

In the present case, there were no corroborating witnesses to the prosecutor's false assertions that Abbott had Atehortua sign a blank piece of paper which Abbott later filled in, or that Abbott forged attorney Denner's signature (Abbott was not held liable for the first accusation but was for the second). Atehortua never complained that Abbott engaged in either charge and neither claim could have gone forward unless defendant

-10-

Rabe acted as a complaining witness when she drew up the BBO petition.

Relitigation

As argued above, this case falls squarely within the exceptions to res judicata, Rooker-Feldman, and absolute immunity. But even if that were not so, that does not necessarily bar this claim within the First Circuit. As Plaintiff argued in his memorandum to the magistrate (which she never addressed). The finality of a state judgment is less than certain. The nuances of the case must be considered. Tang v. R.I. Dept. of Elderly Affairs, 163 F.3d 7, 15 (1st Cir.1998). "[i]n this circuit the 'law of the case' doctrine has not been considered as an inflexible straight jacket that invariably requires rigid compliance with the terms of the mandate." at 10 quoting Northeast Util Serv. Co. V. FERC, 55 F.3d 686, 688 (1st Cir.1995). "We do not find 'the law of the case' doctrine precludes any reconsideration of an issue already settled." citing Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40,42 (1st Cir. 1994).

The First Amendment

Neither the magistrate or defendants' brief addressed the First Amendment argument of the complaint, an issue litigated for the first time in Federal court.
The Plaintiff specifically cited Baker v. Coxe, 940 F.Supp 409,416 a 1983 First Amendmanet case from this Court which held that an appeal from an adverse administrative determination allows the plaintiff to raise constitutional issues not previously raised in judicial proceedings, citing Nester Colon and Successors, Inc. v.

-11-

Custodio, 964 F.2d 32, 39 n.3 (1st Cir. 1992).

## Negligence

The magistrate is correct that absolute immunity protects the defendants from state common law claims, n.12. But the reverse must also be true - if there is no absolute immunity protection as this memorandum argues than the defendants are not entitled to the broad defenses to 1983 in their state law torts. Not only Kalina and Burns v. Reed, 500 U.S. 478 (1991) provide that there is no absolute immunity for a prosecutor who is also a witness or provides bad advice, but Cignetti v. Healey, 89 F. Supp 2d 106, 114 (D. Mass. 2000) citing Burns states. "...it is well settled that prosecutors do not enjoy absolute immunity as to conduct that is merely administrative or investigative." at 116, citing Buckley v. Fitzsimmons, 509 U.S.254, 269 (1993).

The Plaintiff alleged throughout his complaint that the defendants acted in an administrative and investigative capacity as well as defendant Rabe being a complaining witness. The Court must accept as true and draw all reasonable inferences in Plaintiff's favor. Baker at 414 citing Coyne v. City of Somerville, 972 F.2d 440,442-43 (1st Cir. 1992).

## Discovery

It is the defendants who are trying to deny the Plaintiff his fundamental rights by their circular reasoning - you can't get discovery and thus you can't properly adjudicate your claims. Commonsense and case law dictate that his can't be the case. Due process

-12-

Right of Acess to courts comprehends a right to learn facts necessary to seek redress for constitutional violation of individual rights. <u>Brown v. Grabowski,</u> 922 F.2d 1097 (3rd Cir. 1990). When alleged bias is discovered after the proceeding has concluded, due process requires that challenger have the opportunity to object to alleged bias. <u>McKinney v. Pate,</u> 20 F.3d 1550 (11th Cir. 1994) cert denied 513 U.S. 110 115.

A case from this Court, <u>Miller v. Shawmut Bank,</u> 726 f Supp. 337, 342

(D.Mass.198?) held that without proper discovery a summary judgment motion must be denied. The defendants' dismissal motion has the effect of summary judgment.

<u>Attorney's Fees</u>

For both substantive and procedural reasons the Defendants' can not prevail on their claim for attorney's fees. In fact, as discussed below for procedural reasons the Defendants can not prevail on their motion.

Setting aside for the moment local rule 7 which the Plaintiff still feels was not complied with by defendants' counsel, we are still left with the defendants not complying with local rule 16.1 (a). The Plaintiff brought this to the attention of the magistrate in a brief memorandum. She did not address this vital, mandatory rule which is provided to help plaintiffs get a speedy and well ordered resolution to their claims. This is particularly true in this case where the defendants are claiming Defendant Fredrickson is not liable as he had no supervisory role to defendant Rabe, n.13 Magistrate's report. The Plaintiff is thus bumping up against the three year statute of limations in a 1983 action as the SJC decision was issued in the summer of 2002.

-13-

Rule 16 reads in pertinent part: "In every civil action .. The judge or,... a designated magistrate shall convene a scheduling conference as soon as practicable ... and within one hundred and twenty (120) days after the complaint has been served on the defendant."

The docket sheets inform us that on July 12, 2004 this case was transferred from Judge Saris to Judge Gorton.  The following day defendants counsel entered their appearance by way of a Motion, Affidavit, and Memorandum to Dismiss.  The 120 days was way past due when the initial January 7, 2005 hearing date was scheduled.

Since the motion to Dismiss was the Defendants it was their burden as the moving party to argue any Motion within the 120 deadline.  They did not.  They could not show good cause why they could not do this.  "This would require the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension".  Federal Practice and Procedure, Wright, Miller, Kane, s. 1522.1 p. 231, West Pub. Co., St. Paul, MN (1990).  Since a Motion to Dismiss often has the severe effects of a summary judgment the courts place all the burden on the moving party.

Lawyers are duty bound to comply with local rules, In Re Jarvis, 53 F.2d 416 (1st Cir. 1995).  Local rules carry the force of law, Frasier and Wise, P.C. v. Primarily Primates, Inc., 966 F.Supp 63 (D. Mass. 1996).  The Plaintiff should prevail on all his claims as the defendants' attorney did not comply with local rule 16.

Attorney's Fees, Rule 11

For both substantive and procedural reasons, the defendants can not prevail on an award of attorney's fees. A very recent case held that attorney's fees could not be awarded even if the opposing party's claim was "objectively hopeless". <u>Obert v. Republic Western Insurance Co. et al.</u>, (Lawyers Weekly 01-047-05). In that case there were serious allegations that the defendants misrepresented. This charge has never been leveled at the Plaintiff. Rather it is the Plaintiff who alleged in his complaint and which he can drove by documentary evidence, that defendant Rabe was guilty of serious misrepresentations. In any event, the magistrate can not hold the Plaintiff liable for attorney's fees under <u>Obert,</u>

The rules of Federal Civil Procedure are so inviolate and far reaching that they apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal. <u>Vess v. Ciba-Geigy Corp. U.S.A.</u>, 317 F.3d 1097 (9th Cir. 2003).

It is true, that this action substantively can call for an award of attorney's fees. But the rules of procedure still must be met. Rule 11 of the Federal Rules of Civil Procedure is the rule that allows for an award of attorney's fees if the guidelines are met. Rule 11 calls for a separate motion for a sanction award. There is good reason for this - it allows the moving party to thoughtfully marshal his argument and narrow it without lumping all his defenses together. Similarly it allows the non moving party time to reflect on well reasoned specific arguments. In the present case defendants' attorneys brought up the 11th Amendment as a defense. Even the magistrate held is was not

-15-

applicable.  In any event, it is uncontested the defendants did not provide a separate Rule 11.

The sanction motion must be made twenty-one days before filing the actual sanction, attorney fee's motion.  This too was not done.  Again this provides the non moving party reasonable time to digest, research and reflect the merits of the motion.

For the above reasons the defendants' attorney can not be awarded attorney's fees. (Plaintiff's counsel does not feel it serves any purpose to engage in ad hominem attacks that an attorney is not worth $250 an hour if they do not comply with procedural rules, local or otherwise).

A final substantive reason defendants' attorney can not prevail is that the magistrate misconstrued the latitude granted a pro se Plaintiff in a civil rights case. She did not address the case the Plaintiff cited, <u>Regenbugen V. Mustille,</u> 908 F. Supp. 1101 (N.D.N.Y.1995), where a Pro Se attorney was not liable for attorney's fees. Unlike the magistrate who could provide no cites or authority, the <u>Regenbugen</u> case focused on the attorney's Pro Se status not his profession.  Because of their importance, Due Process and Equal Protection claims have traditionally been treated differently and been afforded more latitude.  Pro se pleadings are liberally read and construed when they implicate civil rights. <u>Cruz v. Sielaff,</u> 767 F. Supp 547 (S.D.N.Y. 1991).

-16-

CONCLUSION

The Magistrate's report should be reversed or vacated as she didn't account for Kalina or the other cases holding that there is no absolute immunity when a prosecutor testifies as a complaining witness or in their investigative and administrative functions. Res judicate and Rooker-Feldman can't apply as seventy-five percent of the Plaintiff's claims are being litigated for the first time in Federal Court. The other twenty-five percent should also remain as they are necessary to show a pattern of bad faith and malice, a claim the Plaintiff asserted in all his constitutional and 1983 claims.

In addition the First Circuit is not straight jacketed by "the law of the case' doctrine. The First Circuit has held that federal intervention is proper "to correct errors of constitutional dimension." Lucy v. Gabriel, 732 F.2d 7, 12 (1st Cir. 1984) citing Smith v. Phillips, 455 U.S. 209, 221 (!982). To find for the magistrate's holdings this court would have to concede that right to confrontation, arbitrary and capricious decisions and reciprocal discovery ,see Brady, are not fundamental rights of constitutional dimensions.

Finally, for the procedural reasons of local rule 16, the defendants' motion should be dismissed. The defendants can not be awarded attorney's fees for substantive reasons and for the procedural reason that they didn't abide by the Rules of Federal Procedure, Rule 11.

WHEREFORE the Plaintiff prays for the following relief:

a. A reversal of the magistrate's findings adverse to the Plaintiff;

b. A dismissal of the Defendants' Motion to Dismiss and award of attorney's fees;

-17-

c. This court set dates for reciprocal discovery and a conference between the parties;

d. All other remedies this Court deems just and proper.

The Plaintiff, Pro Se

*Richard Abbott*

Richard Abbott
1426 Hartford Ave.
Suite 109
Johnston, RI 02919
(401) 230-6758
R.I. Bar #2888

Certification

I certify that on March 11, 2005 I mailed, first class, a true copy of the above Memorandum to Defendants' attorney Charles Wyzanski at the Attorney General's Office, One Ashburton Place, Boston, MA 02108.

*Richard Abbott*